IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|   |   |
|---|---|
| AARON RAYMOND,<br>Plaintiff,<br><br>v.<br><br>KIM DINE, *et al*,<br>Defendants. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 12-cv-02192-AW<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Defendant Kim Dine's Motion to Dismiss, or, in the Alternative, for Summary Judgment, Doc. No. 11, and Defendant Frederick City Police Department's Motion to Dismiss, or, in the Alternative, for Summary Judgment, Doc. No. 17. The Court has reviewed the parties' motion papers and exhibits and concludes that no hearing is necessary. *See* Loc. R. 105.6. For the reasons articulated below, the Defendants' Motions will be GRANTED.[1]

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the Complaint and the parties' motion papers and exhibits and are not in dispute, unless otherwise noted.

On March 21, 2011, Plaintiff Aaron Raymond, who is proceeding *pro se*, was arrested following a confrontation with Officer Michael Auge of the Defendant Frederick City Police Department (hereinafter, "FPD"). Officer Auge was called to the scene of a bus stop in Frederick, Maryland, to investigate an individual, later identified as Plaintiff, who was reportedly

---

[1] Also pending is Plaintiff Aaron Raymond's "Motion to Suppress and Objection to" Dine's Motion to Dismiss, Doc. No. 18. This filing should have been docketed as a "Response" to Dine's Motion, and it will be DENIED in the accompanying Order.

kicking and hitting the bus stop shelter.  Officer Auge approached and began speaking with Raymond, who became loudly argumentative, poured a beer out of the paper bag he was holding, and smashed the bag and bottle on the ground.  Officer Auge directed Raymond to pick up the broken bottle or be arrested for littering, but Plaintiff refused.  Auge informed Raymond that he was under arrest, but Raymond physically resisted, and Auge took Raymond to the ground with a leg sweep to subdue him.  Despite further resistance from Raymond when he was on the ground, Auge was able to handcuff him and Raymond was taken into custody.

The same day, Raymond was charged with littering, disorderly conduct, and resisting arrest, and criminal charges were filed against him in the District Court of Maryland for Frederick County.  More than seven months later, on November 2, 2011, the charges were *nolle prossed*.  Where Raymond spent the intervening seven months is not entirely clear from the record.  The correspondence attached to Raymond's Complaint indicates that he was incarcerated at the Frederick County Adult Detention Center through May 2011.  On May 17, 2011, the District Court for Frederick County ordered an out-patient examination as to Raymond's competency to stand trial.  The results of the competency evaluation are not before the Court.  As of July 2011, Raymond was residing at the Thomas B. Finan Center Hospital in Cumberland, Maryland, according to other correspondence attached to his Complaint.

On or about October 19, 2011, Raymond attempted to file a civil lawsuit against Officer Auge and the FPD in the Circuit Court for Frederick County, but the Court denied his motion to waive the filing fee.  On or about November 15, 2011, Raymond filed the instant action against the FPD and Kim Dine, FPD Chief of Police, in the Circuit Court for Prince George's County.  Raymond, in his Complaint and subsequent briefs and correspondence, does not dispute any of the particular facts set forth above.  Raymond alleges that he suffered a hairline fracture of his

jaw when he was arrested by Officer Auge. He claims that Defendants violated his First, Fourth, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendment rights, that he was falsely arrested and imprisoned by Defendants, and that Defendants violated his right to a fair and speedy trial under Maryland law. He alleges damages in the amount of $80,000,000.[2]

Dine was eventually served with the Complaint on June 29, 2012, and removed the action to this Court on July 24, 2012.[3] Dine filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment on July 31, 2012, while the FPD filed the same on September 4, 2012. The motions have been fully briefed and are ripe for the Court's resolution.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded

---

[2] In a subsequent filing in this Court, Raymond increased his claimed damages to $125,000,000.
[3] Counsel for FPD, who is also representing Dine, states that he interpreted Raymond's Complaint to only name Dine as a Defendant at the time of removal. The Court agrees with counsel that the caption to Raymond's Complaint could have been read to list the "Frederick City Police Department" as additional identifying information regarding Dine, who is Chief of Police, rather than as the naming of a separate Defendant. Regardless, FPD now recognizes that it is a party to this action and does not object to its removal.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as for one summary judgment under Rule 56.  Fed. R. Civ. Pro. 12(d).  Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.   ANALYSIS

####   A.   Claims against FPD

Under Federal Rule of Civil Procedure 17(b), a plaintiff may bring suit against any entity capable of being sued.  Under Maryland law, a city or county police department is not such an entity.  *See, e.g.*, *Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004) ("County police departments are agents of the State and should not be viewed as separate legal entities."); *Boyer v. State*, 594 A.2d 121, 128 n.9 (Md. 1991) ("[T]he 'Sheriff's Department' is not an entity capable of being sued."); *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency.").  Thus, Raymond's allegations against the FPD fail to state a claim and must be dismissed.

####   B.   Claims against Chief Dine

With respect to Chief Dine, Raymond has failed to set forth sufficient facts to state a claim to relief that is plausible on its face.  As a general matter, aside from the caption which names Dine as a Defendant, Raymond's Complaint contains no specific mentions of Chief Dine.  *See* Doc. No. 2, at 1.  The Complaint contains little more than conclusory allegations that Defendants caused Raymond to be falsely imprisoned and that they violated his constitutional

rights and state law rights to a jury trial. *Id.* The facts as alleged in the Complaint simply do not give rise to a plausible inference that Chief Dine played any role in Raymond's arrest and subsequent imprisonment.

1. <u>Section 1983 Claims</u>

Raymond does not expressly invoke 42 U.S.C. § 1983 in his Complaint, but the Court construes Raymond's Complaint to allege a violation of his constitutional rights pursuant to that statute. "In order for an individual to be liable under Section 1983, it must be 'affirmatively shown that the official acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). As mentioned above, Raymond has failed to plead that Dine was in any way personally involved with his arrest and imprisonment. To the extent that Raymond alleges that Dine is individually liable based on a theory of supervisory liability, such claims must also fail. The Fourth Circuit has required three elements to establish supervisory liability under Section 1983:

> (1) [T]hat the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). Raymond's Complaint does not allege that Dine had actual or constructive knowledge of Officer Auge's actions, much less that there was a link between his knowledge and the injuries Raymond allegedly suffered. Accordingly, to the extent Raymond states a Section 1983 claim against Chief Dine in his individual capacity, that claim must be dismissed.

Similarly, to the extent the Court construes Raymond's Complaint as making a Section 1983 claim against Dine in his official capacity, such a claim must also be dismissed. "Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, . . . and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) (citations omitted). "[I]t is when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Raymond's Complaint is devoid of any factual allegations that it was Chief Dine's or the FPD's official policies or customs that led to his alleged injuries. Accordingly, Raymond's claims against Chief Dine in his official capacity must be dismissed.[4]

Even if the Court accepted that Dine acted personally in the arrest and imprisonment of Raymond, and assuming that Raymond raised a plausible claim that Chief Dine violated his Fourth Amendment rights,[5] Dine would still be entitled to judgment as a matter of law based on the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[4] The Court notes that even if Raymond's Section 1983 claims against FPD were cognizable, they would fail because Raymond failed to plead that it was the FDP's official policies or customs that led to his injuries.

[5] Even under the most liberal reading possible of Raymond's Complaint, Plaintiff has clearly failed to plead any claims for relief under other provisions of the Constitution. There is no allegation in Raymond's Complaint that comes close to implicating the First, Seventh, or Thirteenth Amendments. It is not plausible that Dine played any role in the administration of the judicial proceedings in Raymond's criminal case, so the Sixth Amendment is not implicated. There is also no allegation that Raymond was incarcerated following conviction, so his claims pursuant to the Eighth Amendment must fail. Finally, Raymond's excessive force claim can only be analyzed under the Fourth Amendment, not the Substantive Due Process Clause, so his Fourteenth Amendment claim likewise fails. *See Graham v. Conner*, 490 U.S. 386, 388 (1989).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Officer Auge avers, and Raymond does not dispute in his Complaint or motion briefs, that he arrested Raymond after the suspect became loudly argumentative, threw a bottle of alcohol on the ground in violation of state littering laws, and "adopted a physical stance indicating resistance." Doc. No. 11-2, ¶¶ 3–7.  Officer Auge acted pursuant to Maryland statutory authority in arresting Raymond following the commission of a misdemeanor in the officer's presence.  Md. Code, Crim. Proc. § 2-202(a) ("A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer.").  Even granting to Raymond that he sustained a hairline fracture in the course of the arrest, the force used by Officer Auge was not objectively unreasonable and did not violate Raymond's clearly established constitutional rights given the circumstances leading up to the arrest.  *See, e.g.*, *Wilson v. Flynn*, 429 F.3d 465, 467–69 (4th Cir. 2005) (finding that officers did not use excessive force on suspect that suffered nasal fracture during arrest where the suspect had been drinking, the officers witnessed him commit a crime in assaulting his wife, he threatened his wife in front of the officers, and he actively resisted officers' efforts to place him under arrest).  Again, Raymond does not dispute Officer Auge's version of events, so there is no genuine issue of material fact regarding the reasonableness of Raymond's arrest.  Accordingly, Raymond's excessive force claim fails as a matter of law.

    2.    <u>False Imprisonment and False Arrest Claims</u>

The Court interprets Raymond's Complaint to include a tort claim for false arrest and false imprisonment against Chief Dine.  Pursuant to Maryland's Local Government Tort Claims Act ("LGTCA"), "an action for unliquidated damages may not be brought against a local

government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code, Cts. & Jud. Proc. § 5-304(b).  This court recognized that under the LGTCA, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005).  Because Raymond failed to allege that he complied with the notice provision of the LGTCA, his false imprisonment and false arrest claims must be dismissed.

Raymond's tort claims also fail as a matter of law because he is unable to prove the requisite elements of a false arrest or false imprisonment claim.  The elements of false arrest and false imprisonment are identical: "(1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). "[W]here the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend on whether or not the officer acted within his legal authority to arrest." *Id.* (quoting *Montgomery Ward v. Wilson*, 664 A.2d 916, 922 (Md. 1995)).  As discussed above, *supra* Part III.B.1, there is no genuine issue of material fact that Officer Auge was acting within his legal authority in arresting Raymond.  Accordingly, Raymond's tort claims fail as a matter of law.

### 3. Trial rights under state law

Raymond finally alleges that Chief Dine violated his rights pursuant to Rules 4-216 and 4-271 of the Maryland Rules of Criminal Causes in not providing the fair and speedy jury trial he requested soon after he was arrested.  Raymond fails to explain, however, how Chief Dine played a role in the criminal proceedings, and it is not plausible from the face of Raymond's

Complaint that is he entitled to relief from Chief Dine based on those proceedings. Accordingly, even assuming that a private right of action exists for violations of the Maryland Rules of Criminal Causes, Raymond's claim will be dismissed.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, or, in the Alternative, for Summary Judgment, are GRANTED. A separate Order will follow.

October 9, 2012                                               /s/
                                                 Alexander Williams, Jr.
                                                 UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that even if it recognized Raymond's ability to sue the FPD for false arrest, false imprisonment, or a violation of the Maryland Rules of Criminal Causes, such claims would have to be dismissed for the same reasons they are dismissed as to Chief Dine.